O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MARY L. GILLETT,                        )    NO. CV 07-03860-MAN
                                        )
               Plaintiff,               )
                                        )    MEMORANDUM OPINION
          v.                            )
                                        )    AND ORDER
MICHAEL J. ASTRUE,                      )
Commissioner of the                     )
Social Security Administration,         )
                                        )
               Defendant.               )
_____)

     Plaintiff filed a Complaint on June 14, 2007, seeking review of the
denial by the Social Security Commissioner ("Commissioner") of her
application for disability insurance benefits ("DIB").  Subsequently,
the parties consented to proceed before the undersigned United States
Magistrate Judge pursuant to 28 U.S.C. § 636(c).  The parties filed a
Joint Stipulation on January 10, 2008, in which Plaintiff seeks an order
reversing the Commissioner's decision and remanding solely for
calculation and award of benefits or, in the alternative, remanding the
matter for a new administrative hearing; and Defendant seeks an order
affirming the Commissioner's decision.  The Court has taken the parties'
Joint Stipulation under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff claims to have been disabled since March 5, 2001, due to a slip and fall injury sustained while working as a teacher's aide. (Administrative Record ("A.R.") 1137.)  Plaintiff claims to suffer from depression, fibromyalgia,[1] status post cervical fusion, and a left shoulder impairment. (*Id*.)  Plaintiff has past relevant work experience as a teacher's aide, a cashier, and an apartment manager. (A.R. 94, 129.)

Plaintiff filed her application for DIB on July 1, 2002. (A.R. 79.)  The Commissioner denied Plaintiff's claim initially and upon reconsideration. (A.R. 38.)  On February 24, 2006, Plaintiff, who was represented by counsel, appeared before Administrative Law Judge Alexander Weir ("ALJ"). (A.R. 1118-58.)  Thereafter, on June 27, 2006, the ALJ denied Plaintiff's claim. (A.R. 19-35.)  The Appeals Council subsequently denied Plaintiff's request for review of that decision. (A.R. 8.)

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that Plaintiff has the following physical impairments:  (1) a back disorder consisting of disc disease of the cervical spine and lumbar spine; (2) fibromyalgia; and (3) mild obesity. (A.R. 34.)  The ALJ determined that Plaintiff's physical impairments

---

[1]   "Fibromyalgia is a syndrome involving chronic widespread and diffuse pain through the entire body, frequently associated with fatigue, stiffness, skin tenderness, and fragmented sleep." Estok v. Apfel, 152 F.3d 636 n.1 (7th Cir. 1998).

have more than a minimal effect on her basic work abilities and, thus, qualify as severe impairments. (*Id.*)  The ALJ concluded, however, that Plaintiff's impairments do not meet or medically equal the criteria of an impairment listed in Appendix 1, Subpart P, Regulation No. 4.  (*Id.*)  Additionally, the ALJ found that Plaintiff has the following mental impairments, which he concluded were not severe:  (1) mental depression related to general physical condition; and (2) somatoform disorder. (*Id.*)  The ALJ further found that Plaintiff's allegations regarding her limitations were "not credible."  (A.R. 35.)  Based on Plaintiff's medical records and the testimony of a vocational expert ("VE"), the ALJ concluded that Plaintiff has the residual functional capacity to perform light work with limitations, and therefore, she can perform her past relevant work as an apartment manager.  (*Id.*)  Consequently, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period.  (*Id.*)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole.  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* (citation omitted).  The "evidence must be more than a mere scintilla but not necessarily a preponderance."  Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003).  While inferences from the record can constitute substantial evidence, only those "'reasonably drawn from the record'" will suffice.  Widmark v. Barnhart, 454 F.3d

3

1063, 1066 (9th Cir. 2006)(citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." <u>Desrosiers v. Sec'y of Health and Human Servs.</u>, 846 F.2d 573, 576 (9th Cir. 1988); *see also* <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." <u>Orn</u>, 495 F.3d at 630; *see also* <u>Connett</u>, 340 F.3d at 874. The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 885 (9th Cir. 2006)(*quoting* <u>Stout v. Comm'r</u>, 454 F.3d 1050, 1055-56 (9th Cir. 2006)); *see also* <u>Burch</u>, 400 F.3d at 679.

**DISCUSSION**

Plaintiff alleges the following three issues:  (1) whether the ALJ

4

erred in failing to make proper credibility findings; (2) whether the ALJ properly rejected treating source opinions regarding Plaintiff's physical residual functional capacity; and (3) whether the ALJ erred in finding at step two that Plaintiff's mental impairments were not legally severe.  The Court addresses these issues, and one other, below.

**I.    The ALJ Arbitrarily Discredited Plaintiff's Testimony Regarding Her Subjective Pain And The Side Effects Of Her Medications.**

Once a disability claimant produces evidence of an underlying physical impairment that is reasonably likely to be the source of her subjective symptom(s), all subjective testimony as to the severity of the symptoms must be considered.  Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 2001)(en banc); see also 20 C.F.R. § 404.1529(a) (explaining how pain and other symptoms are evaluated).  "Unless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." Robbins, 466 F.3d at 883.  Further, the ALJ's credibility findings must be "sufficiently specific" to allow a reviewing court to conclude that the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony.  Moisa, 367 F.3d at 885.  It is the ALJ's  duty to "identify what testimony is credible and what evidence undermines the claimant's complaints." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).

The ALJ does not dispute that Plaintiff has sufficiently

demonstrated objective evidence of physical impairments.  However, the ALJ found that Plaintiff's subjective testimony regarding her condition was "not fully credible" for three reasons.  (A.R. 31.)

**First**, the ALJ notes that Plaintiff's treatment has generally been conservative, because she has not undergone any surgeries since 2001, and she has not been hospitalized for her pain.  (A.R. 31.)  Although Plaintiff does not spend her days in the emergency room, she does have scheduled monthly visits with her doctors.  (A.R. 159.)  Plaintiff also participates in physical therapy twice a week.  (A.R. 120.)  In addition, Plaintiff undergoes weekly individual psychotherapy.  (A.R. 1074.)  Given the nature and extent of Plaintiff's treatment, it does not appear that it is so conservative as to call into question Plaintiff's subjective testimony.  Further, there is no surgical or other cure for fibromyalgia, which can be a debilitating disease.  *See* Jordan v. Northrop Grumman Corp. Welfare Plan, 370 F.3d 869, 872 (9th Cir. 2004)(recognizing that there is no cure for fibromyalgia).  Indeed, it is wholly unclear what additional treatment the ALJ believes Plaintiff should have received.

**Second**, the ALJ inaccurately states that Plaintiff has never alleged that she experiences adverse side effects from her medication. (A.R. 32.)  In fact, in a daily activities questionnaire dated July 15, 2002, Plaintiff stated that "between the daily pain through the body *and all the medication for pain*, [she suffers from] depression, anxiety, fatigue, constipation, upset stomach, ear pain, [and is] always irritable."  (A.R. 119; emphasis added.)

6

When an ALJ evaluates a claimant's limitations, he must consider evidence regarding the side effects of medications. Social Security Ruling 96-7p requires consideration of the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms." *See also* 20 C.F.R. § 416.929(c)(3)(iv). The Ninth Circuit has observed that "the side effects of medications can have a significant impact on an individual's ability to work and should figure in the disability determination process." Varney v. Sec'y of Health & Human Servs., 846 F.2d 581, 585 (9th Cir. 1988). Like pain, side effects can be a "highly idiosyncratic phenomenon," and a claimant's testimony as to their limiting effects should not be trivialized. *Id*.

The ALJ fails to mention 18 of the 19 medications that Plaintiff has been prescribed and to consider the toll such medications have on Plaintiff's mind and body. Such an oversight has been deemed an error. *See* Rabadi v. Astrue, 2008 WL 2490188, *2 (9th Cir. 2008)(rejecting the ALJ's determination that the claimant was not entitled to benefits, because the ALJ failed to take into consideration "side effects of his medication and all of his impairments, whether severe or not, in combination").

**Third**, the ALJ asserts that Plaintiff's daily activities undermine her claim, because "[i]t is doubtful that an individual with the severe pain and limitations asserted by the claimant would do chores such as cleaning up around the apartment and washing dishes, as well as do her own shopping." (A.R. 32.) However, "disability claimants should not be penalized for attempting to lead normal lives in the face of their

limitations." <u>Reddick</u>, 157 F.3d at 722.  It would be unreasonable to require a claimant "to vegetate in a dark room in order to be deemed eligible for benefits." *Id.*  "Many home activities are not easily transferrable to . . . the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." <u>Fair v. Bowen</u>, 885 F.2d 597, 603 (9th Cir. 1989).

Plaintiff states that she can lift her own shampoo bottle in the shower and go shopping, but when she does go shopping, she takes her husband or children with her to carry the heavier items.  (A.R. 120.) Further, although Plaintiff can dress herself, she needs help fixing her bra straps and putting on her belt.  (A.R. 119.)  Plaintiff's daily activities are not so physically demanding as to undermine her credibility and establish her ability to engage in a full-time job.

As Plaintiff's complaints regarding her subjective limitations and medication side effects may have a significant impact on her ability to engage in light work, the ALJ erred in failing to set forth clear and convincing reasons for discounting them.

**II.** **The ALJ Failed To Provide Specific, Legitimate Reasons Supported By Substantial Evidence For Rejecting Plaintiff's Treating Physicians' Opinions.**

A treating physician's conclusions "must be given substantial weight." <u>Embrey v. Bowen</u>, 849 F.2d 418, 422 (9th Cir. 1988).  Even where treating physician's opinions are contradicted, "if the ALJ wishes to disregard the opinion[s] of the treating physician he . . . must make

8

findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987); see also Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)(opinions of treating physicians are entitled to great deference).

In this case, the ALJ found that Plaintiff has the residual functional capacity for light work[2] with limitations.[3]  (A.R. 33.)  In making this determination, the ALJ rejected the findings of two of Plaintiff's treating physicians, Drs. Gil Tepper and Allen Salick.  The ALJ rejected Dr. Tepper's finding that, unless Plaintiff's fibromyalgia went into complete remission, she was unemployable and unable to participate in the open labor market.  (A.R. 26.)  As his basis for rejecting Dr. Tepper's opinion, the ALJ asserts that, since 2002, no other doctor of record has found Plaintiff on examination to have more than slight reduction of neck motion.[4]  (A.R. 27.)  But the ALJ fails to note that Plaintiff has been receiving care from Dr. Tepper since her slip and fall accident in 2001, and there are countless pages of medical

---

[2]   Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds, and may involve a good deal of walking, standing, or sitting while pushing and pulling arm and leg controls.  To be considered capable of performing the full range of light work, the claimant must have the ability to do substantially all of these activities.  20 C.F.R. § 404.1567(b).

[3]   Such limitations include the ability to:  sit or stand as needed; avoid overhead work and extreme torqueing; avoid working at heights and around moving machinery and other hazards.  However, she is capable of gripping and grasping both occasionally and frequently, but not more than frequently (i.e., constantly or repetitively). (A.R. 33.)

[4]   Because one of the principal symptoms of fibromyalgia is stiffness, McFadden v. Barnhart, 2002 WL 31031305, *1 n.1 (N.D. Cal. 2002) (citations omitted), the ALJ believed it was necessary to dispel Dr. Tepper's opinion regarding Plaintiff's reduction in neck motion.

reports regarding her care by Dr. Tepper.  Because Plaintiff has been treated by Dr. Tepper on countless occasions, it seems unreasonable for the ALJ to point to one conclusion in Dr. Tepper's medical records, which differs from those of other medical experts, to claim that his entire medical history of Plaintiff is not credible.

The ALJ also disregarded the opinion of Dr. Salick, Plaintiff's treating rheumatologist.  Dr. Salick noted that Plaintiff's fibromyalgia has left her unable to compete in an open labor market, and thus, she is in a permanent, stationary, and totally disabled condition.  (A.R. 25) In disregarding Dr. Salick's opinion, the ALJ concluded that, although Dr. Salick's "report conveys that [Plaintiff] had some pain due to fibromyalgia, the evidence does not establish that the pain was so severe as to be disabling.  For example, Dr. Salick did not refer the claimant to an emergency room."  (A.R. 26.)  The mere fact that Plaintiff did not seek emergency room treatment does not qualify as a specific, legitimate reason for rejecting Dr. Salick's opinion.  Also, the ALJ states that the only objective factor cited in Dr. Salick's records to support his fibromyalgia diagnoses of Plaintiff "was [the presence of] tender points of fibromyalgia."  (A.R. 26)  The ALJ failed to mention, however, that the tender points test is *the* principal diagnostic test for fibromyalgia.[5]

---

[5]  "The principal symptoms [of fibromyalgia] are pain all over, fatigue, disturbed sleep, stiffness, and the only symptom that discriminates between it and other diseases of a rheumatic character – multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that a patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch.  All of these symptoms are easy to fake, although few applicants for disability benefits may yet be aware of the specific locations that if palpated will cause a patient who really has fibromyalgia to flinch."  McFadden, 2002 WL 31031305 at *1 n.1.

Accordingly, the reasons provided by the ALJ for rejecting the opinions of Plaintiff's treating physicians, Drs. Tepper and Salick, are not legitimate.

**III.  The Record Must Be Further Developed Regarding The Severity Of Plaintiff's Mental Condition.**

A "severe" impairment (or combination of impairments) is defined as one that significantly limits physical or mental ability to do basic work activities.  20 C.F.R. § 404.1520(c).  Basic work activities have been defined as the abilities and aptitudes necessary to do most jobs. 20 C.F.R. § 404.152(b)(3)-(6).  With regard to mental function, these basic work activities include "use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting."  *Id*.

The Supreme Court has recognized that including a "severity" inquiry at stage two of the evaluation process "increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely that they would be found disabled even if their age, education, and experience were taken into account."  Bowen v. Yuckert, 482 U.S. 137, 153 (1987); *see also* Corrao v. Shalala, 20 F.3d 943, 949 (9th Cir. 1994).  Accordingly, an impairment should be found to be non-severe "when the medical evidence establishes only a slight abnormality . . . which would have no more than a minimal effect on a claimant's ability to work."  Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988)(citing Social Security Ruling 85-28).

11

Despite use of the term "severe," most circuits, including the Ninth Circuit, have held that the step two inquiry is a *de minimis* screening devise to dispose of groundless claims. Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). *See*, *e.g.*, Hawkins v. Chater, 113 F.3d 1273, 1290 (9th Cir. 1996); Hudson v. Bowen, 870 F.2d 1392, 1396 (8th Cir. 1989)(evaluation can stop at step two only when there is no more than a minimal effect on a claimant's ability to work).

The ALJ determined that Plaintiff does not have a severe mental impairment. The ALJ specifically bases that finding on the testimony of the Social Security Administration's psychiatrist, Dr. Nathan Lavid, who diagnosed Plaintiff with a "mild level of severity from her mental condition and gave her a GAF score of 65."[6] (A.R. 32.) In relying on Dr. Lavid and the GAF score with which he assessed Plaintiff, the ALJ brushed aside four other GAF scores submitted by Plaintiff's treating psychiatrists, Drs. David Friedman and Inge Polyak. Plaintiff's treating psychiatrists put her in a GAF range of 41-55.[7] (A.R. 28-30.)

The ALJ expressly gave less weight to the treating psychiatrists' opinions, because he found them to be exaggerated and unsupported by the

---

[6] GAF is a scale reflecting the "psychological, social, and occupational function on a hypothetical continuum of mental health-illness." American Psychiatric Association, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 34 (4th ed. Text Revision, 2000) ("DSM IV-TR"). A GAF score between 61-70 indicates some mild symptoms. *Id.*

[7] A GAF score between 41-50 indicates serious symptoms (*e.g.*, suicidal ideation) or any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job. A GAF score between 51-60 indicates moderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupation, or school functioning (*e.g.*, a few friends, conflicts with peers or co- workers). DSM IV-TR at. 34.

medical record as a whole.  (A.R. 28-31.)  Specifically, the ALJ gave very little weight to Dr. Polyak's determination that Plaintiff suffered from major depression, because he found that there were no narrative progress records from the doctor that established Plaintiff experienced symptoms and signs consistent with the problems her doctor listed in the questionnaire.  (A.R. 30.)  However, if the ALJ believed there was a need for further evidence regarding Dr. Polyak's determination that Plaintiff suffered from "major depression and had symptoms that included depression, anxiety pain, insomnia, social isolation, cry spells, fear, loss of function, irritability, poor memory and concentration, diminished energy an anger" (A.R. 563), then the ALJ had the duty to further develop the record to resolve any ambiguities.  *See* Smolen, 80 F.3d at 1288 (noting that the ALJ has a duty to conduct an appropriate inquiry if he needed to know the basis for the treating physicians findings).

Further, the ALJ rejected Dr. Friedman's diagnosis of Plaintiff, because the ALJ believed that the psychiatrist's diagnosis that Plaintiff suffered from major depression was overstated.  (A.R. 30.) Additionally, the ALJ discredits Dr. Friedman's diagnosis, because he failed to explain why on June 8, 2005, he assessed Plaintiff with a GAF score of 41, which was lower than Plaintiff's GAF score of 55 assessed in August 2001, but opined that she had less severe functional limitations at the time her GAF score was lower.  (*Id.*)  Again, if the ALJ found that Dr. Friedman's conclusions were ambiguous, it was his duty to develop the record further, rather than disregarding Dr. Friedman entire testimony.

13

1    Finally, it is inappropriate for an ALJ to substitute his own
2  medical judgment for that of the treating physician.  *See* Tackett v.
3  Apfel, 180 F.3d 1094, 1102 (9th Cir. 1999); Day v. Weinberger, 522 F.2d
4  1154, 1156 (9th Cir. 1975)(recognizing that an ALJ is forbidden from
5  making his own medical assessments beyond those demonstrated by the
6  record).  In this case, the ALJ substituted his own diagnosis for that
7  of Dr. Polyak.  For example, the ALJ stated that "if the claimant
8  actually had the major problems noted in [Dr. Polyak's] questionnaire,
9  it is likely that she would be seen by a psychiatrist or psychologist
10 more often than once every 1-2 months."  (A.R. 30.)

11

12    Although such a determination is better left to medical experts,
13 the mere fact that Plaintiff is prescribed several psychological
14 medications (*i.e.*, Zoloft, Ativan, Buspar, Elavil, Tradazone, and
15 Zonegran) (A.R. 29; J.S. 14, 20) suggests that she would likely meet the
16 *de minimis* severity standard.  Thus, on remand, it is imperative that
17 the ALJ focus on developing the medical testimony to determine properly
18 the severity of Plaintiff's mental impairments.

19

20 **IV.  The ALJ Mischaracterized The Record To Support His Decision.**

21

22    Although not raised by Plaintiff as a legally significant error,
23 the ALJ's decision rests on several mischaracterizations of the record.

24

25    First, the ALJ recognizes that Plaintiff had been prescribed
26 moderately strong pain medication, Vicodin, and "other medications" to
27 reduce her pain.  (A.R. 32.)  The ALJ's decision fails to note that
28 Plaintiff is, in fact, taking **18** other medications to alleviate her

14

symptoms, including at least four at a maximum dosage.  (A.R. 598.)
Plaintiff was prescribed the following drugs:  (1) Vicodin; (2) Soma;
(3) Pamelor; (4) Neurontin; (5) Ativan; (6) Zonegran; (7) Elavil; (8)
Zoloft; (9) Trazadone; and (10) Buspar.  Additionally, Plaintiff has
been prescribed the following medications:  (1) Frorinal; (2) Motrin;
(3) Protonix; (4) Zonegram; (5) Provigil; (6) Chlorhexidine Gluconale;
(7) Lozi; (8) Cephalexin; and (9) Ambien. (A.R. 116-17.)  None of these
drugs, with the exception of Vicodin, was explicitly mentioned in the
ALJ's decision.  Also, the ALJ did not include a list of the medications
Plaintiff was prescribed or reference any of the medications' side
effects when presenting his hypothetical to the VE.  When making a
disability determination, the ALJ's description of the claimant's
disability must be accurate and detailed.  <u>Tackett</u>, 180 F.3d at 1101.
On remand, for the VE to make an accurate finding regarding Plaintiff's
ability to perform her past relevant work, it is necessary for the ALJ
to include in his hypothetical all medications Plaintiff has been
prescribed and any side effects of such medications which Plaintiff
experiences.

     Second, the ALJ mischaracterizes Plaintiff's size.  In his
decision, the ALJ finds that Plaintiff suffers from mild obesity. (A.R.
32.)  In reaching this conclusion, the ALJ noted that Plaintiff
"generally weigh[s] around 200 pounds . . . and is 65 inches tall".
(<i>Id.</i>)  However, the ALJ fails to note that Plaintiff's weight has
fluctuated up to 222 pounds, and inexplicably, medical records describe
her height as anywhere between five feet two inches and five feet five
inches.  (A.R. 456.)  Beyond this, the ALJ stated that "none of the
medical records in the voluminous file shows a diagnosis of obesity."

15

(A.R. 32.)  As a result, the ALJ found that Plaintiff was only "mildly obese" when determining the severity of Plaintiff's impairments.  (A.R. 32, 34.)  However, in Dr. Friedman's report dated August 23, 2001, he stated that Plaintiff was "noticeably obese."  (A.R. 185.)

The ALJ's materially "inaccurate characterization of the evidence" compounds the error in his decision in this case.  *See* <u>Regennitter v. Comm'r</u>, 166 F.3d 1294, 1297 (9th Cir. 1999).

**V.   <u>Remand Is Required</u>.**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. <u>Harman v. Apfel</u>, 211 F.3d 1172, 1175-78 (9th Cir. 2000).  Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.  *Id.* at 1179 ("the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings").  However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate.  *Id.*

Here, remand is the appropriate remedy to allow the ALJ the opportunity to remedy the above-mentioned deficiencies and errors.  *See, e.g.,* <u>Benecke v. Barnhart</u>, 379 F.3d 587, 593 (9th Cir. 2004)(remand for further proceedings is appropriate if enhancement of the record would be

16

1  useful); <u>McAllister v. Sullivan</u>, 888 F.2d 599, 603 (9th Cir.
2  1989)(remand appropriate to remedy defects in the record).
3
4                              **CONCLUSION**
5
6       Accordingly, for the reasons stated above, IT IS ORDERED that the
7  decision of the Commissioner is REVERSED, and this case is REMANDED for
8  further proceedings consistent with this Memorandum Opinion and Order.
9
10      IT IS FURTHER ORDERED that the Clerk of the Court shall serve
11 copies of this Memorandum Opinion and Order and the Judgment on counsel
12 for Plaintiff and for Defendant.
13
14      **LET JUDGMENT BE ENTERED ACCORDINGLY.**
15
16 DATED: November 25, 2008
17                              _____
                                          /s/
18                              MARGARET A. NAGLE
                                UNITED STATES MAGISTRATE JUDGE
19
20
21
22
23
24
25
26
27
28